**William M. O'KEEFFE, Deputy Commissioner, United States Department of Labor, Appellant,**

**v.**

**PAN AMERICAN WORLD AIRWAYS, INC., et al., Appellees.**

**No. 20440.**

United States Court of Appeals Fifth Circuit.

Oct. 16, 1964.

Rehearing Denied Dec. 28, 1964.

[redacted]

Donald C. Lehman, Asst. U. S. Atty., Jacksonville, Fla., Leavenworth Colby, Chief, Adm. Sec. Dept. of Justice, Washington, D. C., for appellant.

Arthur M. Ossinsky, Daytona Beach, Fla., Charles Cook Howell, John E. Houser, Jacksonville, Fla., Howell & Houser, Jacksonville, Fla., of counsel, for appellees.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and McRAE, District Judge.

WISDOM, Circuit Judge.

This is a "scope-of-employment" case involving an employee on Grand Turk Island in the British West Indies, 700 miles from the mainland. Discussing a similar case, Judge Chambers of the Ninth Circuit has written: "We do not think that the case is to be tested by the conventional mainland case where the truck driver departs from his authorized route for his private personal convenience." Self v. Hanson, 9 Cir. 1962, 305 F.2d 699. We agree with the Ninth Circuit.

The appeal is from a judgment setting aside a compensation order issued by the Deputy Commissioner, Secretary of Labor, under the Defense Bases Act, 42 U.S.C.A. §§ 1651–1654. The order awarded death benefits to the widow and minor children of George B. Rose, an employee of Pan American World Airways, who was killed in a traffic accident on Grand Turk. On the essential question whether the employee's death arose out of the course of his employment, the district court considered Gondeck (United States v. Pan American World Airways, Inc., 5 Cir. 1962, 299 F.2d 74, cert. denied, 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.

2d 499) controlling. We find Gondeck distinguishable. On the record before us, substantial evidence and fair inferences support the Deputy Commissioner's findings and require reinstatement of his order.

Pan American World Airways, Inc. is one of the government cost-plus contractors in the Cape Canaveral missile project. Its Guided Missile Range Division has a series of tracking stations on islands strung out into the South Atlantic. One such station is located on Grand Turk, a small, flat, tropical island in the Caicos Islands Group. Its white population varies from about 30 to 125. There are anywhere from 1,400 to 3,000 natives on the island. In addition to the PAA tracking station on a United States Air Force land strip, there is a tiny United States Navy base, and a small office of British Wireless & Cable, Ltd. Cockburn Town, the island's only settlement, has two streets and the Queen's Highway which runs to the PAA base two miles from the village.

There are few recreational facilities on Grand Turk.[1] At the tracking station, PAA runs the "Conch Club", a cocktail lounge and game room. Boating, fishing, and swimming are available during the daytime. For other recreation PAA employees must go to the "Exiles Club" of British Wireless & Cable, Ltd., or to one of the four or five "juke joints" or bars located in native shacks, or to the parish hall of the Anglican Church.

George B. Rose was the "Medical Recreation Supervisor" on the island. His duties required him to organize social and recreational activities for the men on the base and to render assistance to the base medical officer. His nominal duty hours were from 7:15 A.M. to 4:15 P.M. during the week and from 7:15 A.M. to 12:00 Noon on Saturdays, but he was on call at all times. When he left the base he was required to leave word where he could be located and he was often called upon for emergency duties. He received a salary of $440 a month plus a "down range" bonus of 30 per cent.

September 11, 1959, after his regular duty hours, Rose borrowed a friend's motor scooter and made a social visit to the home of the Leroy Smiths near Cockburn Town. On his way back he had gone 200 yards down the highway when his scooter collided with a PAA truck. Rose was killed.

The record shows that as the truck and the scooter approached, the driver of the truck moved his vehicle to the *left* side of the road. Grand Turk is a British possession where the law of the road requires vehicles to drive on the left side of the road. Rose had been on the island for about three months. On a number of occasions he had driven a jeep, but the evidence suggests that this night was the first time he had been in control of a vehicle on the highway after dark. The Commissioner drew the inference that Rose's long ingrained habit of right hand driving asserted itself when confronted with an emergency traffic situation. By veering to the right instead of to the left, he put his scooter onto a collision course. Rose had played cribbage for three hours

1. The Commissioner's supplemental "Clarifying Findings" state: "[At the time of his death Rose was] * * * on a journey of recreation for respite from the natural boredom inherent in the unique character and isolated site of employment, its remoteness from available recreation, and its narrow limits of normal pastime, and that such recreation was a benefit to the employer as an economic factor in industrial relations." The appellee, in its brief, would allow no room for any inference that employees lack or need recreation on Grand Turk: "There is no evidence that there was any 'natural boredom inherent in the unique character and isolated site of employment'; no evidence that Rose needed or was seeking 'respite' from it. The proposed finding that the island was characterized by 'remoteness from available recreation' is contradicted by the fact that Pan American had provided a club for the recreation of its employees; and there is no evidence that the supposed recreation Rose was seeking in the company of Mrs. Smith or in one of the native night clubs in Cockburntown 'was a benefit to the employer as an economic factor in industrial relations'."

before leaving the Smiths' home, and every witness testified to his sobriety. The Deputy Commissioner found that at the time of the accident Rose was sober, that he was not in violation of any order or work rule of PAA, and that the proximate cause of the accident was Rose's confusion over the controlling rules of the road.

The Defense Bases Act requires payment of the compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950 for injury or death of employees sent away from home on overseas missions "irrespective of the place where the injury or death occurs".[2] In sustaining the claim for compensation in this case, the Deputy Commissioner found:

> "the contract of hire by the above employer and the above decedent employee brought the decedent employee to a zone where he had to seek recreation under exacting and unconventional conditions and the decedent was acting in the course of his employment when the accident occurred and that the conditions of the employment created a zone of special danger out of which the fatal injury arose."

■ The Defense Bases Act provides workmen's compensation benefits for many employed outside the territorial jurisdiction of the states. It was adopted at the request of the Secretary of

War in order to save the previous heavy expense of providing its contractors with insurance of such employees on the basis of tort liability and full accident insurance, H.Rep.No.1070, 77 Cong., 1st Sess. (July 29, 1941), pp. 4, 7. See generally, Republic Aviation Corp. v. Lowe, S.D. N.Y.1946, 69 F.Supp. 472, affirmed, 2 Cir. 1947, 164 F.2d 18, cert. den., 1948, 333 U.S. 845, 68 S.Ct. 663, 92 L.Ed. 1128. Congress intended the act to establish the same finality for decisions of deputy commissioners which is established for the Longshoremen's Act. It must be "liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results." Voris v. Eikel, 1953, 346 U.S. 328, 333, 74 S. Ct. 88, 92, 98 L.Ed. 5.

■ Employees working under the Defense Bases Act, far away from their families and friends, in remote places where there are severely limited recreational and social activities, are in different circumstances from employees working at home. Personal activities of a social or recreational nature must be considered as incident to the overseas employment relationship. The employer recognized the problem: Rose's job was to organize entertainment on and off the base for the off-duty hours of other employees. An employee injured on Grand Turk while off-duty but on call is like a seaman injured ashore on fun of his own. Short of wilful misconduct, the seaman is still in the "service of his ship".[3] Similarly, Rose, off-duty but sub-

---

2. 42 U.S.C.A. § 1651

"(a) Except as herein modified, the provisions of the Longshoremen's and Harbor Workers' Compensation Act, as amended, shall apply in respect to the injury or death of any employee engaged in any employment— * * *

"(4) under a contract entered into with the United States of any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States and at places not with-

in the areas described in subparagraphs (1)–(3) of this subdivision, for the purpose of engaging in public work * * * irrespective of the place where the death or injury occurs, and shall include any injury or death occurring to any such employee during transportation to or from his place of employment, where the employer or the United States provides the transportation or the cost thereof."

3. Cf. Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 731, 63 S.Ct. 930, 934, 87 L.Ed. 1107: "* * * Unlike men employed in service on land, the seaman, when he finishes his day's work, is neither relieved of obligations to his employer nor

ject to call, was in the service of his employer.

■ Whether the Commissioner's determination involves a "question of fact" or a "question of law where Congress intended the administrative agency to have some discretion or leeway in defining and applying the standard", judicial review of administrative determinations of scope of employment is limited by the substantial evidence test.[4] In O'Leary v. Brown-Pacific-Maxon, Inc., 1951, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483, the Supreme Court discussed that test as it applies to findings of the Deputy Commissioner in cases under the Defense Bases Act:

> "The Deputy Commissioner treated the question whether the particular rescue attempt described by the evidence was one of the class covered by the Act [was within the scope of the decedent's employment] as a question of 'fact.' Doing so only serves to illustrate once more the variety of ascertainments covered by the blanket term 'fact.' Here of course it does not connote a simple, external, physical event as to which there is conflicting testimony. *The conclusion contains a combination of the happenings and the inferences drawn from them. In part at least, the inferences presuppose applicable standards for assessing the simple, external facts. Yet the standards are not so severable from the experience of industry nor of such a nature as to be peculiarly appropriate for independent judicial ascertainment as 'questions of law.'*

> "Both sides concede that the scope of judicial review of such findings of fact is governed by the Administrative Procedure Act. Act of June 11, 1946, 60 Stat. 237 [Ch. 324], 5 U.S.C.A. § 1001 et seq. The standard, therefore, is that discussed in Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474 [457] [71 S.Ct. 456, 95 L.Ed. 456]. It is sufficiently described by saying that *the findings are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole.*" 340 U.S. at 507–508, 71 S.Ct. at 472, 95 L.Ed. 487. (Emphasis added.)

In O'Leary v. Brown-Pacific-Maxon, Inc., the injured employee was on Guam, an island far more civilized than Grand

---

wholly free to dispose of his leisure as he sees fit. Of necessity, during the voyage he must eat, drink, lodge and divert himself within the confines of the ship. In short, during the period of his tenure the vessel is not merely his place of employment; it is the framework of his existence. For that reason among others, his employer's responsibility for maintenance and cure extends beyond injuries sustained because of, or while engaged in, activities required by his employment. In this respect it is a broader liability than that imposed by modern workmen's compensation statutes. Appropriately it covers all injuries and ailments incurred without misconduct on the seaman's part amounting to ground for forfeiture, at least while he is on the ship, 'subject to the call of duty as a seaman, and earning wages as such.'

" * * * *

"We think that the principles governing shipboard injuries apply to the facts presented by these cases. To relieve the shipowner of his obligation in the case of injuries incurred on shore leave would cast upon the seaman hazards encountered only by reason of the voyage. The assumption is hardly sound that the normal uses and purposes of shore leave are 'exclusively personal' and have no relation to the vessel's business. Men cannot live for long cooped up aboard ship, without substantial impairment of their efficiency, if not also serious danger to discipline. Relaxation beyond the confines of the ship is necessary if the work is to go on, more so that it may move smoothly."

4. See Jaffe, Judicial Review: Question of Law, 69 Harv.L.Rev. 239, 241 (1955); 4 Davis, Administrative Law, §§ 28.08, 29.04, 30.05 (1958); Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv.L.Rev. 1362, 1377 (1953). See also Gilmore & Black, The Law of Admiralty, p. 343, § 6–47 (1957); 1 Edelman, Maritime Injury and Death 363 (1960); The Supreme Court, 1950 Term, 65 Harv.L.Rev. 107, 163 (1951).

Turk. The employee was off-duty, had sought recreation, and was waiting for transportation back to his base from a recreation trip when he dived into dangerous waters, where swimming was prohibited, in order to rescue two employees of another employer. He drowned. The Deputy Commissioner made a finding of "fact", as the Supreme Court "seemingly went out of its way" to point out,[5] that the death arose out of and in the course of employment. In reinstating the award, set aside by the court below, the Supreme Court held:

> "Workmen's compensation is not confined by common-law conceptions of scope of employment, Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 481, [67 S.Ct. 801, 808, 91 L.Ed. 1028]; Matter of Waters v. William J. Taylor Co., 218 N.Y. 248, 251, 112 N.E. 727, 728, L.R.A.1917A, 347. The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Thom v. Sinclair, [1917] A.C. 127, 142 [(Eng.) [1919]. A.C. 127, 142 Ann.Cas.1917D, 188–H.L.]. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. *All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose.*" O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. at 506, 71 S.Ct. at 471, 95 L. Ed. 486. (Emphasis added.)

Guam was also the place of employment in Self v. Hanson. Mrs. Self was injured while in a parked automobile with a friend at a time and place which the Court described as leading to "some cynicism about the parking". In upholding the Deputy Commissioner's award, the court observed:

> "[T]his is a case where the scope of employment should be construed in favor of the workman * * *.

Obviously, recreation was considered a necessity for MK–PK employees in Guam * * *. [In] conclud-[ing] that Mrs. Self's injury was one 'arising out of and in the course of employment * * * [we] consider our decision consistent with the liberal purpose of the act."

In Hastorf-Nettles, Inc. v. Pillsbury, 9 Cir. 1953, 203 F.2d 641, the employee was injured while returning to his base from a Labor Day recreation in Anchorage, Alaska. In upholding the compensation award the court stated:

> "The Deputy Commissioner undoubtedly had the exclusive and unreviewable right to draw inferences from the unique character and isolated place of the employment in which Vogel was engaged; its remoteness from available recreation and its narrowed limits of normal pastime; the benefit to Vogel and his employer of recreation as an economic factor in industrial relations; the infrequency of an inconvenience to utilize public transportation facilities; * * *. These circumstances and substantial factors, we think, adequately in law justified the Deputy Commissioner in finding as he did on the whole record before him that Vogel's injuries arose out of and in the course of his employment." 203 F.2d at 643.

In Pan American World Airways, Inc. v. O'Hearne, 4 Cir. 1964, 335 F.2d 70, the claimants were the widow and children of Robert M. Smith who was killed in the same automobile accident on San Salvador, (Watling) Island in the British West Indies, in which Frank Gondeck was killed. Smith, Gondeck, and two other friends were returning to the PAA base after spending some leisure hours in "Evelyn's", a native pub in the only settlement on San Salvador. The jeep in which they were riding overturned, because of excessive speed or, perhaps, because of a defect in the road. Smith

---

5. 4 Davis, Administrative Law 134 (1958).

and Gondeck were killed. The Court, reversing the district court, reinstated the Commissioner's award:

> "The Commissioner concluded that the death of Robert M. Smith arose out of and in the course of his employment. Considering the distant place of employment, the sparsity of population and limited area of the island, the Commissioner determined that the group, including the present decedent, were justified in looking for recreation beyond the confines of their habitat. In the circumstances of his employment-residence, the Commissioner thought, Smith was only 'doing what he [might] reasonably be expected to do.' In short, that his brief exit was 'an incident of the service'. * * * Although some of the factual ascertainments made by the Commissioner may be without full support, we think substantial evidence undergirds his crucial and determinative fact findings. To these he applied correct and apt principles of law. Together they dictate the award." 335 F.2d at 71.

The Gondeck case stands alone, except for a per curiam opinion. Smith Hinchman and Grylls Associates, Inc., et al. v. O'Keefe, 5 Cir. 1964, 327 F.2d 1003, 1004. In Gondeck, the Court noted that the decedent and three others had been sitting around the Reef Club drinking champagne from 4 P.M. to 7:30 P.M., when they took off for town in a jeep which they had been forbidden to use for personal missions. This Court affirmed the district court's order setting aside the Commissioner's award. The Court emphasized, among other things, "nor did [Gondeck] use the means of travel to and from the place of recreation furnished by the employer". In upholding the Commissioner's award to the heirs of Smith, the Fourth Circuit noted:

> "If the evidence there adduced [in Gondeck] was of the same factual content as that offered here, we would deferentially disagree with the outcome." Pan American World

Airways, Inc. v. O'Hearne, 335 F.2d at 71.

If Gondeck is consistent with O'Leary v. Brown-Pacific-Maxon, we think that its holding should be limited to the fact-situation presented in the record. There is a major difference between Gondeck and the case before us in that the hazard resulting from the left-hand driving rule created a special link between the injury and the place of employment. The Commissioner was well within the scope of his authority in making the inferences, first, that this British traffic rule exposed Rose to an unusual danger and second, that it was the cause of Rose's death. "If supported by evidence and not inconsistent with the law, the Deputy Commissioner's inference * * * is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable * * *." Cardillo v. Liberty Mutual Ins. Co., 1947, 330 U.S. 469, 477, 67 S.Ct. 801, 806, 91 L.Ed. 1028.

There are other distinctions between the cases. In Gondeck the Court noted that the record did not support the Commissioner's finding that the employee was subject to call after his regular duty hours. Here the record shows clearly that Rose was subject to call at all times, without regard to his convenience or to regular working hours. And the record shows that he had been called on a number of times at night to render emergency first-aid. In addition, Rose was not guilty of having violated any company rule at the time of injury; Gondeck's violation cost him his life.

Since for the foregoing reasons Gondeck does not control this case, we base our decision on the principle that employment in such places as Grand Turk Island creates a zone of special danger linking the injury with the place of employment. On such an island, lacking in most of the social and recreational facilities usually available to American employees, the individual's recreation is in the service of his employer no less than in his own interest. If an employee subject to call in off-duty hours is in-

jured after his regular day while engaged in recreational or social activities or returning to base, the injury may properly be held to have occurred within the scope of his employment. We hold that the Deputy Commissioner properly applied these principles to the facts in this case in finding that Rose's death arose out of and in the course of his employment.

We reverse and remand with instructions that the Deputy Commissioner's order of award be reinstated.