Clayton **WILSON** and Alaska Workmen's
Compensation Board, Appellants,

v.

Stewart **ERICKSON** and Employer's Lia-
bility Assurance Corporation,
Appellees.

No. 1277.

Supreme Court of Alaska.

Dec. 14, 1970.

William H. Fuld, of Kay, Miller & Lib-
bey, Anchorage, E. Kent Edwards, Atty.
Gen., Juneau, Robert Hartig, Asst. Atty.
Gen., Anchorage, for appellants.

Robert Opland, of Hagans & Opland,
Anchorage, for appellees.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, Justices.

## OPINION

ERWIN, Justice.

█ In this appeal, appellants assert that the Superior Court erred in reversing a finding of permanent total disability and a finding that certain penalties were due which was rendered by the Alaska Workmen's Compensation Board. Our review is limited to a determination of whether the Board's findings were supported by substantial evidence in light of the whole record.[1]

The evidence before the Board as to the nature of claimant's disability and the causal relationship to the August 10, 1966, injury was conflicting. On review, it would not be our province to weigh the evidence or choose between competing inferences reasonably to be drawn from the evidence. Judge Holtzoff articulated this well-established principle of review in compensation cases in Great American Indemnity Co. v. Britton,[2] in an appeal under the Longshoremen's and Harborworkers' Act. He wrote:

> The only questions that the Court may consider are, first, whether the award is contrary to law; and second, whether the administrative findings of fact are supported by substantial evidence. * * That countervailing evidence may have more probative value would not warrant the court in overruling the find-

ings. So, too, the Court may not set aside the inferences drawn by the Administrator from the evidence that he chose to believe, if such inferences are reasonably possible and have a rational basis. * * * The Court may not substitute its own judgment for that of the Deputy Commissioner.[3]

In the case at bar, Clayton Wilson is 59 years of age and has lived in the Anchorage area since he came from Kodiak in 1955. Claimant is married and has four dependents, ages 16, 11, 8 and 3. Claimant had been employed regularly between 1955 and 1965 by the same employer. In 1966, the claimant went to work for Stewart Erickson and indicates that he did not miss any work because of illness, but apparently had had a hernia operation at one time. The claimant denied completely that prior to the accident he had had any back trouble or neck trouble.

The accident occurred on August 10, 1966, and from that time on up and through the date of the hearing the claimant has not been able to do any regular work, even though he indicated that he had, in the year after the accident and before the time for which any temporary total disability was awarded herein, worked at some five jobs which took up approximately five months' period of time. The record indicates that claimant had no earnings in 1968 and had earned $6,153.00 in 1966 and $7,467.00 in 1967.

The accident apparently happened when a P & H Dragline cable caught the claim-

1. In Thornton v. Alaska Workmen's Compensation Board, 411 P.2d 209, 211 (Alaska 1966), substantial evidence was defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Brown v. Northwest Airlines, Inc., 444 P.2d 529, 531 (Alaska 1968); State, Dep't. of Highways v. Johns, 422 P.2d 855, 860 (Alaska 1967); Alaska Redi-Mix, Inc. v. Alaska Workmen's Compensation Board, 417 P.2d 595, 599 (Alaska 1966); Morrison-Knudsen Co. v. Vereen, 414 P.2d 536, 542 (Alaska, 1966); RCA Service Co. v. Liggett, 394 P.2d 675, 677 (Alaska 1964); Beylund v. Matanuska Valley Farmers Co-Op. Assn., 391 P.2d 176, 178 (Alaska 1964); Forth v. Northern Stevedoring & Handling Corp., 385 P.2d 944, 948 (Alaska 1963).

2. 186 F.Supp. 938, 940–941 (D.D.C.1960); rev'd on other grounds 110 U.S.App.D.C. 190, 290 F.2d 381 (1961), cert. denied, 368 U.S. 900, 82 S.Ct. 178, 7 L.Ed.2d 95 (1961).

3. Quoted with approval in Morrison-Knudsen Co. v. Vereen, 414 P.2d 536, 543 (Alaska 1966).

ant's feet, flipping him into the air. The claimant was initially seen by Dr. Sims on August 15, 1966. He next went to Dr. Voke on April 30, 1968, May 16, 1968, May 21, 1968, June 6, 1968, and June 27, 1968. Dr. Voke apparently referred claimant to Dr. Perry Mead and Dr. Paul Dittrich. While the findings of Dr. Dittrich are referred to by the Board, the findings of Dr. Mead were not part of the record.

There is no question but that the accident happened in the course of the employment because the parties so stipulated. The problem appears to be whether or not the claimant suffered a compensable injury. That he did was the opinion expressed by Dr. Wichman,[4] the claimant, and the Workmen's Compensation Board, while, on the other hand, Dr. Dittrich felt that the present injury was attributable to advanced degenerative arthritis.

In view of this state of the record, three prior decisions of this court have significance here. In Thornton v. Alaska Workmen's Compensation Board,[5] the court found it is a well-established rule in workmen's compensation law that a pre-existing disease or infirmity does not disqualify a claim under the work-connection requirement if the employment aggravated, accelerated or combined with the disease or infirmity to produce the death or disability from which compensation is sought. The question in a particular case of whether the employment did so contribute to the final result is one of fact which is usually determined from medical testimony.[6] In Thornton [7] we also said:

> In these circumstances we find that there is lacking the kind of evidence which a reasonable mind might find adequate to support the Board's determination that the climbing of the tower was not a crucial precipitating factor in Thornton's death. Whether 'crucial' or not the evidence shows that the exertion of climbing the tower was a precipitating factor in Thornton's death, and this bolsters the statutory presumption that the death arose out of and in the course of Thornton's employment. The superior court erred in granting judgment for appellees in this action by appellant to set aside the Board's order denying compensation.

Additionally, in the case of Aleutian Homes v. Fischer,[8] the court stated:

> Compensation is not to be barred because the risk is not generally recognized or because only those unusually susceptible or predisposed to a given disease will contract it.

■ In the case of Brown v. Northwest Airlines, Inc., 444 P.2d 529, 533 (Alaska 1968), the court cited the Thornton and Fischer cases in holding as follows:

> It is on the basis of the Thornton, Fischer, and Vereen trilogy that we have con-

---

4. On pages 14 through 17 of the Transcript, the Workmen's Compensation Hearing, Dr. Wichman stated his opinion as follows:

> Q. Dr. Wichman, in your opinion, to a reasonable medical certainty, is Mr. Wilson disabled from following his usual occupation of heavy equipment operator?
> A. Yes.
> Q. And the condition, would it be fair to call it 'severe arthritis and spondylosis'?
> A. Yes.
> * * * *
> Q. Doctor, is the history the patient gave in the other reports consistent with a finding of nerve injury?
> A. Yes. In whose reports? Dr. Mead's or * * *?

> * * * * *
> Q. Would it be fair to say, based on your examination and the reports you've read and the claims of the patient, that with a reasonable medical certainty his condition was aggravated by the injury of August 10, 1966?
> A. Yes.
> Q. And that the resulting disability has continued to the present time?
> A. Yes.

5. 411 P.2d 209, 210 (Alaska 1966).

6. See 1 A. Larson, Workmen's Compensation Law, § 12.20 at 192.41–.47 (1968).

7. 411 P.2d at 211.

8. 418 P.2d 769, 777–778 (Alaska 1966).

cluded this case must be remanded for more explicit findings of fact. These three cases establish that disability flowing from traumatic neurosis is compensable; that compensation will not be barred because appellant was 'unusually susceptible or predisposed to' a given mental or nervous disorder; that the appellant is entitled to compensation if the work-connected accident or injury 'aggravated, accelerated, or combined with the disease or infirmity to produce * * disability,' or, as we said in *Thornton,* appellant should be compensated if the fall was 'a precipitating factor' in any disability resulting from traumatic neurosis causally related to her employment. It is thus clear that the aggravation of the pre-existing condition would in fact be compensable.

The Board found that the claimant was totally disabled from April 30, 1968, until the date of the award and that such disability was permanent and would continue in the future until evidence showed improvement. The question of whether or not such injury is permanent is not altogether clear from the medical testimony. Dr. Wichman's testimony is subject to more than one interpretation [9] and while Dr. Dittrich's testimony is more positive he obviously does not agree as to the causative factors of the injury.[10] However, as this court has previously pointed out, the court is not limited to the face value of the medical testimony but in fact can rely on the inferences therefrom [11] and the peculiar facts of the case before the court.

■ The record discloses that the appellant is 59 years of age and has worked only a total of five months since the accident on August 10, 1966, even though he is married and has four children. The appellant had no earnings in 1968 and testified he was and is totally unable to work because of back and neck pain and he further indicated that he had dizzy spells and problems with holding objects. All persons agree that the claimant worked for 16 years continuously before the accident and the majority of medical testimony concedes marked degenerative arthritis aggravated by the injury herein.

Dr. Voke and Dr. Wichman found him disabled and could suggest little to alleviate the problem, while Dr. Dittrich found little likelihood of further gainful employment, even though he suggested the claimant's attitude played an important part in this. Under this state of the evidence, we find there is substantial evidence to support the

9. The only indication in the record concerning such permanent disability is found in the transcript of the Workmen's Compensation Hearing, pages 17 and 18, as follows, in a redirect examination of the witness by counsel for the Respondent:

Q. Are you saying, doctor, that that results in permanent disability?
MR. FULD: I didn't ask him that. I asked him if it continues to the present time.
MR. OPLAND: Well, you are asking for a permanent disability rating. I thought that was the issue before the Board.
MR. FULD: That is correct, but if you are, my question was if it has resulted to the present time.
A. This is not demonstrable on the examination.
Q. It isn't?
A. No.

Q. Well then is it to a reasonable degree a medical certainty?
A. Yes, I think it is.
Q. Resulting from what?
A. From spondylosis, pre-existing spondylosis and aggravation of his sustained.
Q. Does the aggravation still have effects upon his condition?
A. Yes. * * *

10. Dr. Dittrich made the following recommendation with regard to the particular patient: "I doubt if patient is capable of gainful employment or of rehabilitation, not so much as a result of his injury or physical condition, but of his outlook and lack of ambition."

11. *See* Beauchamp v. Employers Liability Assurance Corp., 477 P.2d 993 (Opinion No. 655, 1970); Maddocks v. Bennett, 456 P.2d 453, 460–461 (Alaska 1969); 2 A. Larson, Workmen's Compensation Law, § 79.51 at 299–301 (1970).

finding of permanent total disability.[12] Certainly, it is not the function of this court to reweigh the evidence other than to determine whether or not such evidence exists.[13]

The Board also found temporary total disability from the date of April 30, 1968, until the date of the hearing. This finding was reversed by the Superior Court which found no basis for such a claim. In this court appellee advanced the argument that the Board could not make a finding concerning temporary total disability without giving notice to the appellee under procedural rules of the Workmen's Compensation Board. Since the whole purpose of the workmen's compensation informal procedures is to get away from cumbersome procedures and reach a correct decision by the shortest and quickest possible route consistent with due process [14] the question becomes whether or not the Board could make a finding of temporary total disability where the application for adjustment of claim requested a finding of permanent total disability.

A short review of the Alaska Workmen's Compensation Act reveals that the Act provides for the award of compensation in four possible categories: temporary partial disability;[15] temporary total disability;[16] permanent partial disability;[17] permanent total disability;[18] and further provides that the compensation for a job-connected disability must be paid by the employer [19] with the first installment of compensation becoming due on the 14th day after the employer has knowledge of the injury.[20]

If compensation is not paid as required by the statute, controversion must occur within 14 days after notice of the injury [21] or, if compensation is paid, notification must be given of any suspension of termination of payment by the employer to the Workmen's Compensation Board.[22] In the event of controversion under the statute or any disagreement between the parties, the Alaska Workmen's Compensation Board is empowered to hear and determine *all questions* in respect to the claim.[23]

Under the statutory scheme announced in the Alaska Workmen's Compensation Act, we find that it is permissible for the Board to award more or less than the relief requested and find there is substantial evidence in this case to support the decision of the Board as to temporary total disability.[24] The findings of the Workmen's Compensation Board are thus affirmed so far as a finding of temporary

---

12. The argument of appellee that the medical testimony is less than clear and thus should be disregarded is not without merit. However, since there are areas of medical expertise where medical testimony is less than positive, the court's review is limited as previously stated and we are not free to adopt inferences which might suggest themselves as more probable at an original hearing.

13. *See* Pan American Petroleum Corp. v. Shell Oil Co., 455 P.2d 12, 20–21 (Alaska 1969).

14. 2 A. Larson, Workmen's Compensation Law, § 78.10 at 252 (1970).

15. AS 23.30.200.

16. AS 23.30.185.

17. AS 23.30.190.

18. AS 23.30.180.

19. AS 23.30.045.

20. AS 23.30.155(b).

21. AS 23.30.155(d).

22. AS 23.30.155(c), (g).

23. AS 23.30.110(a) provides: "Subject to the provisions of § 105 of this chapter, a claim for compensation may be filed with the board in accordance with its regulations at any time after the first seven days of disability following an injury, or at any time after death, and the board may hear and determine *all questions* in respect to the claim." (emphasis added)

24. *See* Garcia v. Aetna Cas. & Surety Co., 322 S.W.2d 415, 416 (Tex.Civ.App. 1959). *Cf.* Wilson v. Interior Airways, Inc., 384 P.2d 956, 958–959 (Alaska 1963).

total disability is concerned and the Superior Court is reversed upon this point.[25]

 Respondent has cited as an additional ground for reversal that there was no finding concerning the wages of the claimant, but the transcript of the compensation hearing contains undisputed testimony as follows:

Q. What was your average wage when you were so employed?

A. It ran from two to three hundred a week take home pay.

Q. What did you get per hour?

A. The last I worked I was getting seventeen and I think before that seven when I was at Harland I got five something. I don't remember just exactly but it was five something.[26]

The Board simply assumed the payment of maximum compensation under AS 23.30.-210 and AS 23.30.220 and did not make a specific finding as to the average weekly wage or the specific impairment of earning capacity. The testimony on weekly earnings and the testimony of a total absence of earnings during the entire year of 1968 would have been substantial evidence for the finding of maximum weekly compensation based on impairment of earning capacity under AS 23.30.210. While undoubtedly a specific finding by the Board would have been desirable, the failure to make one can only be deemed at most harmless error in cases such as this where the figures used are easily determined from the decision itself.[27] The determination of the superior court on this point is reversed.

The final problems in this case revolve around the awarding of penalties under Section 23.30.155(c), (e) and (g) of Alaska Statutes.[28] The Board awarded the claimant a twenty percent penalty for failure of appellee to make prompt payment as required by the statute and assessed a $100.00 penalty against the appellee for failure to give notice to the Board of termination of the payment of compensation under the statute after payments had been made for approximately four months.

25. The Board used the date of April 30, 1968, as the starting point for temporary total disability. The record is clear that the claimant was disabled prior to this time but since the claimant does not raise objection to the date we will not disturb this finding of the Compensation Board.

26. The employer's report of injury shows an average weekly wage of $300.00 and an hourly rate of $5.34.

27. Alaska R.Civ.P. 61.

28. "(c) Upon making the first payment, and upon suspension of payment of any cause, the employer shall immediately notify the board, in accordance with a form prescribed by the board, that payment of compensation has begun or has been suspended, as the case may be."

"(e) If any installment of compensation payable without an award is not paid within 14 days after it becomes due, as provided in (b) of this section, there shall be added to the unpaid installment an amount equal to 20 percent of it, which shall be paid at the same time as, and in addition to, the installment, unless notice is filed under (d) of this section or unless the nonpayment is excused by the board after a showing by the employer that owing to conditions over which he had no control the installment could not be paid within the period prescribed for the payment."

"(g) Within 16 days after final payment of compensation has been made, the employer shall send to the board a notice in accordance with a form prescribed by the board stating the fact that final payment has been made, the total amount of compensation paid, the name of the employee and of any other person to whom compensation has been paid, the date of the injury or death, and the date to which compensation has been paid. If the employer fails to so notify the board within this time, the board shall assess against the employer a civil penalty in the amount of $100.00."

The application for adjustment of claim was signed on July 10, 1968, and was sent to the Board on August 12, 1968. The first notification of action by the employer or his compensation carrier was a letter to the Board by the carrier's attorney dated October 4, 1968, noting a tentative hearing date in late October, and a follow-up letter on October 22, 1968, containing a report of payment.

The letter from Dr. Voke dated June 29, 1968, to the carrier about the injury, as well as the subsequent correspondence, clearly shows that the workmen's compensation carrier had notice of the claimed injury at the very latest in early July, but there is no explanation in the record for the failure to make payments within 14 days as required by AS 23.30.155(e).

■ There is no question but that the employer stopped payment of compensation on January 13, 1969, after the examination by Dr. Dittrich without notice to the claimant or notice to the Workmen's Compensation Board that further compensation would not be paid as required by AS 22.-20.155(g).

Respondent alleges that a hearing must be held in this matter with notification given to him concerning the intention to assess a penalty before any penalty can be assessed. The statute, however, does not require any hearing,[29] but specifically provides that the penalties will be assessed automatically.[30]

This case is reversed and remanded to the Superior Court with instructions to enter an order affirming the decision of the Alaska Workmen's Compensation Board.

---

29. *Id.* at (e) and (g).

30. While AS 23.30.155(e) provides for presentation of evidence on the reason for failure to comply, there is no similar method provided in AS 23.30.155(g) to relax the statutory requirement. In any event, no evidence was presented by respondent concerning any possible justifiable excuse for failing to comply with either section.