### Richard A. ANDERSON, Appellant,

### v.

### EMPLOYERS LIABILITY ASSURANCE CORPORATION and Universal Services, Inc., Appellees.

### No. 1494.

Supreme Court of Alaska.

June 19, 1972.

---

ployer. The employer also provided a bartender and a liquor license for the "Rat Roost" bar on its premises on the island. It also furnished a pool table, ping pong, shuffleboard, card tables and movies for the recreation of its employees.

While appellant had regularly scheduled work hours from 8:00 a.m. to 5:30 p.m., he was subject to 24-hour call and had been called after working hours on several occasions during the seven weeks he had been on the job.

Induced by a wager with another employee while in the "Rat Roost", appellant entered into a contest to determine which man could climb a transmission pole the most rapidly.[1] After the wager was made, appellant went to his truck, got his climbing tools, and the two men walked to a power pole outside the barracks where the employees lived.

After the other employee had climbed the pole, appellant tried but slipped after he had climbed a few feet. On the next try he made it to the top of the pole, but then lost his grip and fell to the ground, landing on his seat. As a result of this fall appellant fractured his wrist and crushed two vertebrae.

From this factual pattern the Alaska Workmen's Compensation Board concluded that the appellant's fall and resulting injuries grew out of the course and scope of his employment and were, therefore, compensable. On appeal, the superior court held otherwise. It reversed the board and entered summary judgment in favor of the employer, thus denying to Anderson any right to compensation. From that judgment Anderson brings this appeal.

■ Our review of determinations of the Alaska Workmen's Compensation Board is limited by the substantial evidence test.[2] A decision of the board may not be

William M. Erwin, Anchorage, for appellant.

Charles W. Hagans, Anchorage, for appellees.

Before RABINOWITZ and CONNOR, JJ.

## OPINION

CONNOR, Justice.

An employee at a remote site suffered injuries during the period when he was off his regular shift but was subject to call at any time. The question on appeal is whether the injuries are compensable under the Alaska system of workmen's compensation.

Richard Anderson was employed by Universal Services, Inc., as an electrician-lineman on Amchitka Island in the Aleutians, admittedly a remote site. Anderson lived on the employer's premises, and was provided with food and lodging by the em-

---

1. No suggestion is made that Anderson was in any way intoxicated on this occasion.

2. Laborers and Hod Carriers Union, Local No. 341 v. Groothuis, 494 P.2d 808, 810 (Alaska 1972); Wilson v. Erickson, 477 P.2d 998, 999 (Alaska 1970); Brown v. Northwest Airlines, Inc., 444 P.2d 529, 531 (Alaska 1968); State Dept. of Highways v. Johns, 422 P.2d 855, 860 (Alaska

overturned unless it is unsupported by substantial evidence on the record taken as a whole.[3] It is not important that the particular situation before the board is subject to more than one inference.[4] What matters is whether the determination of the board is supported by substantial evidence on the whole record.

When an employee is required by the conditions of his employment to reside on the employer's premises where he is constantly on call, his activities which occur on the premises are normally considered to be "work connected."[5] Compensation may be awarded even though the accident occurs during the hours when the employee is off duty. Most activities necessary to the personal comfort of the employee, and most recreational activities, which occur upon the premises are found to be within the coverage of the workmen's compensation statutes.[6]

An outgrowth of these rules is the doctrine which has emerged in cases concerning resident workers on overseas construction projects, at isolated locations and at work premises which are relatively remote from the normal amenities of civilization.

In an impressive number of cases compensation has been awarded for injuries occurring while the employee was pursuing recreational activities, even at locations not immediately adjacent to the job site or the living quarters.[7] Although it is often possible for a resident employee in a civilized community to leave his work and residential premises to pursue an entirely personal whim and thereby remove himself from work-connected coverage, the worker at a remote area may not so easily leave his job site behind. The isolation and the remote nature of his working environment is an all encompassing condition of his employment. The remote site worker is required as a condition of his employment to do all of his eating, sleeping and socializing on the work premises. Activities normally totally divorced from his work routine then become a part of the working conditions to which he is subjected. For these reasons many courts have concluded that when an employee is working in a remote area far from family and friends and the normal recreational outlets available to the working man, his recreational activities become an incident of his employment.[8]

1967); Alaska Redi-Mix, Inc. v. Alaska Workmen's Compensation Board, 417 P. 2d 595, 597–598 (Alaska 1966); Morrison-Knudsen Co. v. Vereen, 414 P.2d 536 (Alaska 1966); Thornton v. Alaska Workmen's Compensation Board, 411 P. 2d 209 (Alaska 1966); Fischback & Moore of Alaska, Inc. v. Lynn, 407 P.2d 174, 178 (Alaska 1965); R.C.A. Serv. Co. v. Liggett, 394 P.2d 675, 680 (Alaska 1964); Beylund v. Matanuska Valley Farmers Co-op Ass'n, 391 P.2d 176, 178 (Alaska 1964); Forth v. Northern Stevedoring & Handling Corp., 385 P.2d 944, 948 (Alaska 1963); Keiner v. City of Anchorage, 378 P.2d 406, 411 (Alaska 1963).

3. Cases cited note 2, *supra*. *See* O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 507–508, 71 S.Ct. 470, 95 L.Ed. 483 (1950); O'Keeffe v. Pan American World Airways, Inc., 338 F.2d 319, 323 (5th Cir. 1964); Hastorf-Nettles, Inc. v. Pillsbury, 203 F.2d 641, 643 (1953).

4. Laborers and Hod Carriers Union, Local No. 341 v. Groothuis, 494 P.2d 808, 811

(Alaska 1972); Wilson v. Erickson, 477 P.2d 998, 999 (Alaska 1970).

5. 1 A. Larson, Law of Workmen's Compensation §§ 24.00–24.21 (1968); Truck Insurance Exchange v. Industrial Accident Commission, 27 Cal.2d 813, 167 P. 2d 705, 707 (1946).

Under Alaska's Workmen's Compensation Law, compensation is payable for accidental injury or death "arising out of and in the course of employment." AS 23.30.265(13). In Northern Corporation v. Saari, 409 P.2d 845, 846 (Alaska 1966), we said that the two tests enunciated above should be merged into a single concept of work connection because, "if the accidental injury or death is connected with any of the incidents of one's employment, then the injury or death would both arise out of and be in the course of such employment."

6. 1 A. Larson, n. 5, supra, at 422–26.

7. *Id.* at 435.

8. O'Keeffe v. Smith, Hinchman & Grylls Associates, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965); O'Leary v.

Influenced by the unique character of the remote site employees' work environment, the United States Supreme Court has extended workmen's compensation coverage to recreational activities which would not be covered in the case of the worker who can leave his job at the end of the work day. That court upheld an award of workmen's compensation benefits in the case of a worker who was drowned after the boat he had overloaded with sand sank in a South Korean lake, O'Keeffe v. Smith, Hinchman & Grylls Associates, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965). He had been hired to do office work for a government contractor, and the boating accident occurred on a weekend while the employee was helping a friend build a beach many miles from the office. The court upheld the District Court's decision that

"'[T]he Deputy Commissioner was correct in his finding that the conditions of the deceased's employment created a zone where the deceased Ecker had to seek recreation under exacting and unconventional conditions and that therefore the accident and death of the decedent arose out of and in the course of employment.'" 380 U.S., at 363, 85 S. Ct., at 1015.

The employer alludes to the dissenting opinion of Mr. Justice Harlan in O'Keeffe v. Smith, Hinchman & Grylls Associates, supra, at 365, 85 S.Ct. 1012, in which that distinguished jurist expresses the view that to permit compensation for such injuries as occurred there (the sinking of a boat laden with sand, while helping a friend build a private beach) is to impose an absolute liability upon the employer whenever an award is made in the first instance, "and the job location is one to which the reviewing judge would not choose to go if he had his choice of vacation spots." 380 U. S., at 370, 85 S.Ct., at 1018. A careful reading of that dissent reveals that Mr. Justice Harlan would limit compensability of such recreational injuries to those which result from special dangers peculiar to the particular place and conditions of employment. We are unable to accept that as the appropriate test. Not only would it be contrary to the standards we adopted in Northern Corporation v. Saari, supra, n. 5, but it would import into our workmen's compensation system a principle of tort law which would lead to uneven results in remote site, recreational injury cases.

In Pan American World Airways, Inc. v. O'Hearne, 335 F.2d 70 (4th Cir. 1964), the Fourth Circuit awarded workmen's compensation benefits in the case of an employee killed in a car accident on San Salvador Island when returning to a defense base from a pub in a nearby town. The court stated:

"Considering the distant place of employment, the sparsity of population and limited area of the island, the Commissioner determined that the group, including the present decedent, were justified in looking for recreation beyond the confines of their habitat. In the circumstances of his employment-residence, the Commissioner thought, Smith was only 'doing what he [might] reasonably be expected to do.' In short, that his brief exit was 'an incident of the service.'"[9]

One significant formulation of the remote-site rule was given by Judge Wisdom in O'Keeffe v. Pan American World Airways, Inc., 338 F.2d 319 (5th Cir. 1964). There the court upheld workmen's compensation coverage in the case of an employee on Grand Turk Island in the British West Indies who was killed in a traffic accident driving home after an evening of cribbage, stating:

"Employees working under the Defense Bases Act, far away from their

Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); O'Keefe v. Pan American World Airways, Inc., 338 F.2d 319 (5th Cir. 1964); Pan American World Airways, Inc. v. O'Hearne, 335 F.2d 70 (4th Cir. 1964);

Self v. Hanson, 305 F.2d 699 (9th Cir. 1962); Hastorf-Nettles, Inc. v. Pillsbury, 203 F.2d 641 (9th Cir. 1953).

9. Pan American World Airways, Inc. v. O'Hearne, 335 F.2d 70, 71 (4th Cir. 1964).

families and friends, in remote places where there are severely limited recreational and social activities, are in different circumstances from employees working at home. Personal activities of a social or recreational nature must be considered as incident to the overseas employment relationship. . . . An employee injured on Grand Turk while off-duty but on call is like a seaman injured ashore on fun of his own. Short of wilful misconduct, the seaman is still in the 'service of his ship.' Similarly, Rose [decedent workman], off-duty but subject to call, was in the service of his employer."[10]

■ A special condition of employment at a remote site like Amchitka Island is that it places severe limitations upon the recreational outlets available to the average worker. It is undoubtedly to an employer's benefit in increased worker efficiency that his employees take part in reasonable recreation; thus in a remote area such as Amchitka Island the reasonable recreational activities of an employee

are in the interest of the employer as well as an employee.[11] We find, therefore, that when an on-call employee at a remote work site is injured while engaged in reasonable recreational activities, his injuries may properly be considered work connected under the Alaska's Workmen's Compensation Act. This decision is merely a reaffirmation of the principle we expounded in Northern Corporation v. Saari, 409 P.2d 845 (Alaska 1966), in which we held compensable the death of a remote site employee who was returning from an evening at a nearby military-operated cocktail lounge.

The employer urges that injuries of this type should not be compensable unless the "employee was engaged in a recognized or normal recreational activity," and that we should require a finding that "the employee was justified in seeking the activity and that it was reasonable to engage in it." The gist of this argument is that the recreational activity should be either one sponsored by the employer or one engaged in so commonly by the employees that the em-

10. O'Keeffe v. Pan American World Airways, Inc., 338 F.2d 319, 322–323 (5th Cir. 1964) (footnote omitted). We find this analogy of the situation of the remote area worker to that of the sailor particularly apt. Judge Wisdom utilized the following quotation from Aguilar v. Standard Oil Co., 318 U.S. 724, 731, 63 S.Ct. 930, 934, 87 L.Ed. 1107 (1943), to demonstrate the extensive coverage given to injured seamen because of the confining nature of their work environment:

". . . Unlike men employed in service on land, the seaman, when he finishes his day's work, is neither relieved of obligations to his employer nor wholly free to dispose of his leisure as he sees fit. Of necessity, during the voyage he must eat, drink, lodge and divert himself within the confines of the ship. In short, during the period of his tenure the vessel is not merely his place of employment; it is the framework of his existence. For that reason among others his employer's responsibility for maintenance and cure extends beyond injuries sustained because of, or while engaged in, activities required by his employment. In this respect it is a broader liability than that imposed by modern workmen's compensation statutes. Ap-

propriately it covers all injuries and ailments incurred without misconduct on the seaman's part amounting to ground for forfeiture, at least while he is on the ship, 'subject to the call of duty as a seaman, and earning wages as such.'

". . .

"We think that the principles governing shipboard injuries apply to the facts presented by these cases. To relieve the shipowner of his obligation in the case of injuries incurred on shore leave would cast upon the seaman hazards encountered only by reason of the voyage. The assumption is hardly sound that the normal uses and purposes of shore leave are 'exclusively personal' and have no relation to the vessel's business. Men cannot live for long cooped up aboard ship without substantial impairment of their efficiency, if not also serious danger to discipline. Relaxation beyond the confines of the ship is necessary if the work is to go on, more so that it may move smoothly."

11. O'Keeffe v. Pan American World Airways, Inc., 338 F.2d 319, 325 (5th Cir. 1964); Hastorf-Nettles, Inc. v. Pillsbury, 203 F.2d 641, 643 (9th Cir. 1953).

ployer can be said to have foreknowledge that such recreational activity will occur. We think that such a test would draw too fine a line in the remote site, recreational injury cases.

■ The recreational activity should, of course, be reasonable activity. But what is reasonable must be gauged both by the entire circumstances and by a consideration of what, consistent with human needs, a person in the position of the injured worker might have sought as a recreational outlet. Working men at remote places can hardly be expected to limit themselves to purely sedate forms of recreation or to physical activities into which only the most timorous would venture.

■ Viewed in this manner, we do not find the recreational activity engaged in by Anderson to be unreasonable. Persons who live or work together in close proximity often engage in contests of physical prowess or athletic skill. A pole-climbing contest is hardly abnormal for one who earns his living, in part, through climbing poles. We note also in this case that the tools with which to engage in the contest were located in a truck parked near the building where the pole climbing wager was made. In this sense, and because Anderson was actually employed as a lineman, a greater nexus with the employment existed here than in many remote site injury cases. In our opinion there was substantial evidence before the board from which it could be concluded that the recreational activity was reasonable under the circumstances. The injuries were, therefore, compensable.

The case is reversed and remanded for the entry of judgment affirming the board's award.

Reversed and remanded.

ERWIN and BOOCHEVER, JJ., not participating.

BONEY, Chief Justice (dissenting).

I agree with the majority opinion that deference is owed to the findings of fact entered by the Alaska Workmen's Compensation Board and that those findings should be "accepted unless they are unsupported by substantial evidence on the record considered as a whole." [1] I also agree that reasonable recreation at remote sites, being in the interest of the employer as well as the employee, is an incident of employment at such sites. Injuries from reasonable recreation at remote sites are thus properly to be compensated for under our workmen's compensation law.

However, in the instant case, I find myself unable to accept either that pole-climbing was reasonable recreation or that the finding by the Alaska Workmen's Compensation Board that it was is not unsupported by substantial evidence on the record as a whole. The majority opinion too lightly dismisses the employer's argument that remote site recreation injuries should be compensable only if the recreation was either sponsored by the employer or commonly engaged in by the employees. I would hold that remote site recreation is reasonable, and that injuries resulting therefrom are compensable, only where: the employer offers no recreational facilities and therefore forces his employees to seek their own recreation; or, the employee is injured using in a reasonable way the recreational facilities provided by the employer; or, the injury results from a foreseeable and reasonable activity in which human beings may be expected to engaged.[2] In each of the cases relied upon

---

1. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483, 487 (1951).

2. Unless such limitations are imposed, the employer becomes absolutely liable for remote site recreation injuries. As Justice Harlan stated in his dissent

from O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 370, 85 S.Ct. 1012, 1018, 13 L.Ed.2d 895, 902 (1965):

> To permit compensation for such injuries is to impose absolute liability upon the employer for any and all injuries, whatever their nature, what-

by the majority at least one of the above three factors was present;[3] here none are.[4] In their absence, I would hold that there is no evidence supporting the Board's conclu-

sion that the recreation was reasonable. I would therefore affirm the decision of the superior court reversing the Board and denying compensation benefits.

> ever their cause, just so long as the Deputy Commissioner makes an award and the job location is one to which the reviewing judge would not choose to go if he had his choice of vacation spots.

Furthermore, failure to impose such limitations induces employers to forego the added expenses of providing recreational facilities since such provision in no way lessens their potential liability.

3. No facilities: O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 360, 85 S.Ct. 1012, 13 L.Ed.2d 895, 896 (1965); Hastorf-Nettles, Inc. v. Pillsbury, 203 F.2d 641, 642 (9th Cir. 1953). Using facilities: Self v. Hanson, 305 F.2d 699, 702 (9th Cir. 1962); Northern Corporation v. Saari, 409 P.2d 845, 846 (Alaska 1966) (travelling from

facilities). Reasonable and foreseeable human activity: O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed.2d 483, 487 (1951); O'Keeffe v. Pan American World Airways, Inc., 338 F.2d 319, 321 (5th Cir. 1964), cert. denied, 380 U.S. 951, 85 S.Ct. 1083, 13 L.Ed.2d 969 (1965); Pan American World Airways, Inc. v. O'Hearne, 335 F.2d 70, 71 (4th Cir. 1964), cert. denied, 380 U.S. 950, 85 S.Ct. 1080, 13 L.Ed.2d 968 (1965); Self v. Hanson, 305 F.2d 699, 700, 702 (9th Cir. 1962).

4. Recreational facilities were provided; Anderson was not using the provided facilities; pole-climbing is not a foreseeable and reasonable activity in which human beings may be expected to engage.