## GONDECK v. PAN AMERICAN WORLD AIRWAYS, INC., ET AL.

No. 919, October Term, 1961.  Certiorari denied June 11, 1962.—
Rehearing denied October 8, 1962.—Rehearing and certiorari
granted and case decided October 18, 1965.

*Arthur Roth* for petitioner.

*Leo M. Alpert* for respondents.

Per Curiam.

Petitioner's husband, Frank J. Gondeck, was killed as a result of a jeep accident on San Salvador Island outside a defense base at which he was employed. The accident took place in the evening as Gondeck and four others were returning from a nearby town. The Deputy Commissioner of the Bureau of Employees' Compensation, United States Department of Labor, awarded death benefits to petitioner in accordance with the terms of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.* (1958 ed.), as extended by the Defense Base Act, 55 Stat. 622, as amended, 42 U. S. C. § 1651 *et seq.* (1958 ed.). In support of the award, the Deputy Commissioner found, among other things, that, although Gondeck had completed his day's work, he was subject to call for emergencies while off duty and was returning from reasonable recreation when the accident occurred. The District Court set aside the Deputy Commissioner's order, and the Court of Appeals for the Fifth Circuit affirmed. *United States* v. *Pan American World Airways, Inc.,* 299 F. 2d 74. The Court of Appeals acknowledged that Gondeck was subject to call, *id.,* at 75, but found no benefit to the employer in Gondeck's trip, and "no evidence that furnishes a link by which the activity in which Gondeck was engaged was related to his employment." *Id.,* at 77.

On June 11, 1962, we denied certiorari. 370 U. S. 918. On October 8, 1962, we denied a petition for rehearing. 371 U. S. 856. We are now apprised, however, of "intervening circumstances of substantial . . . effect,"* justifying application of the established doctrine that "the interest in finality of litigation must yield where the

---

*U. S. Supreme Ct. Rule 58 (2).

interests of justice would make unfair the strict application of our rules." *United States* v. *Ohio Power Co.*, 353 U. S. 98, 99. Subsequent to our orders in the present case, the Court of Appeals for the Fourth Circuit upheld an award to the survivors of another employee killed in the same accident. *Pan American World Airways, Inc.* v. *O'Hearne*, 335 F. 2d 70. In upholding the award, the court cited our decision in *O'Leary* v. *Brown-Pacific-Maxon, Inc.*, 340 U. S. 504. In a subsequent case the Court of Appeals for the Fifth Circuit itself expressed doubt whether its decision in the present case had been consistent with *Brown-Pacific-Maxon*. *O'Keeffe* v. *Pan American World Airways*, 338 F. 2d 319, 325. The court also noted that, "The Gondeck case stands alone, except for a per curiam opinion." *Id.*, at 325. This Court reversed that *per curiam* judgment last Term, *O'Keeffe* v. *Smith, Hinchman & Grylls Associates, Inc.*, 380 U. S. 359, so that the present case now stands completely alone.

In *O'Keeffe* we made clear that the determinations of the Deputy Commissioner are subject only to limited judicial review, and we reaffirmed the *Brown-Pacific-Maxon* holding that the Deputy Commissioner need not find a causal relation between the nature of the victim's employment and the accident, nor that the victim was engaged in activity of benefit to the employer at the time of his injury or death. No more is required than that the obligations or conditions of employment create the "zone of special danger" out of which the injury or death arose. Since the Court of Appeals for the Fifth Circuit misinterpreted the *Brown-Pacific-Maxon* standard in this case, and since, of those eligible for compensation from the accident, this petitioner stands alone in not receiving it, "the interests of justice would make unfair the strict application of our rules." *United States* v. *Ohio Power Co., supra,* at 99.

We therefore grant the motion for leave to file the petition for rehearing, grant the petition for rehearing, vacate the order denying certiorari, grant the petition for certiorari, and reverse the judgment of the Court of Appeals.

*It is so ordered.*

MR. JUSTICE FORTAS took no part in the consideration or decision of this case.

MR. JUSTICE CLARK, joining in the judgment.

I fully agree with my Brother HARLAN "that litigation must at some point come to an end" and "that this decision holds seeds of mischief for the future orderly administration of justice . . . ." But with *Cahill* v. *New York, N. H. & H. R. Co.,* 351 U. S. 183 (1956), on our books, no other conclusion can be reached.

Up until *Cahill* I thought that successive petitions for rehearing would not be received by the Court under its Rule 58 (4).[1] This rule took the place of the old "end of Term" rule of *Bronson* v. *Schulten,* 104 U. S. 410, 415 (1882), abolished by the Congress in 1948, 28 U. S. C. § 452 (1958 ed.). Indeed, I doubted that the Court had the power to grant a successive petition for rehearing under a factual situation, as here, where a petition for certiorari had been denied over three years ago, 370 U. S. 918 (1962); a petition for rehearing had been denied, 371 U. S. 856 (1962); the mandate had issued more than three years before; and where petitioner had, about the same date, cancelled her appeal bond and been discharged of all liability thereunder. In *Cahill,* however, the Court through the device of a "motion to recall and amend the judgment" permitted a successive peti-

---

[1] "Consecutive petitions for rehearings, and petitions for rehearing that are out of time under this rule, will not be received."

tion not only to be received but granted, despite the fact that the judgment thereby reopened had been previously paid.[2] This paved the way for the grant of a successive petition for rehearing in *United States* v. *Ohio Power Co.,* 353 U. S. 98 (1957), to make its judgment conform with this Court's decision that same Term in *United States* v. *Allen-Bradley Co.,* 352 U. S. 306 (1957), a companion case of *Ohio Power* in the Court of Claims.

The vice, of course, is the granting of successive petitions for rehearing in violation of Rule 58 (4), which was done for the first time in *Cahill.* It makes no difference that the rejection of finality be to correct alleged errors of our own or those below. Nor does it matter that the errors be corrected in the same Term, as in *Cahill,* or four Terms later, as here. In each instance the action violates Rule 58 (4) and that is the basis of my position.

I, too, as my Brother HARLAN said in *Ohio Power,* "can think of nothing more unsettling to lawyers and litigants, and more disturbing to their confidence in the evenhandedness of the Court's processes, than to be left in . . . uncertainty . . . as to when their cases may be considered finally closed in this Court." At p. 111 (dissenting opinion). However, *Cahill* opened up this practice. It may be that *Ohio Power* and the present case are more objectionable on their facts, but they merely condone *Cahill's* original vice. Until we can gain the vote of the majority to the contrary we are stuck with the practice. The outlook for this appears dim. We can only hope that this rule of "no finality," which the Court varnishes with the charms of reason, will be sparingly used, or overruled by Congress, as was the "end of Term" rule. I, therefore, join in the judgment of the Court.

---

[2] MR. JUSTICE BLACK, joined by THE CHIEF JUSTICE, MR. JUSTICE DOUGLAS and myself, dissented.

Mr. Justice Harlan, dissenting.

The result reached in this case has been achieved at the expense of the sound legal principle that litigation must at some point come to an end.

I can find nothing in the train of events on which the Court relies in overturning this more than three-year-old final judgment that justifies bringing into play the dubious doctrine of *United States* v. *Ohio Power Co.*, 353 U. S. 98, a case which was decided by a closely divided vote of less than a full bench,[1] which deviated from long-established practices of this Court,[2] and which, so far as I can find, has had no sequel in subsequent decisions of the Court.[3]

The judgment against this petitioner became final as long ago as June 11, 1962. 370 U. S. 918. The Court refused to reconsider it four months later when it denied rehearing on October 8, 1962. 371 U. S. 856. When some two years later, July 13, 1964, the Court of Appeals for the Fourth Circuit upheld a compensation award with respect to a co-employee of Gondeck killed in the *same* accident, *Pan American World Airways, Inc.* v. *O'Hearne*, 335 F. 2d 70, petitioner did not even seek to file another petition for rehearing here. A few months later the Fifth Circuit might be thought to have indicated some doubt about its earlier decision in the *Gondeck* case, *O'Keeffe* v. *Pan American World Airways, Inc.*, 338 F. 2d 319, 325,

---

[1] The vote was 4 to 3, Mr. Justice Brennan and Mr. Justice Whittaker, since retired, not participating. 353 U. S., at 99.

[2] See dissenting opinion of Harlan, J., 353 U. S., at 99.

[3] My Brother Clark's citation of *Cahill* v. *New York, N. H. & H. R. Co.*, 351 U. S. 183, *ante*, p. 28, for the proposition that this petition for rehearing must be granted is inapposite. *Cahill* was an FELA case in which this Court reversed summarily a judgment of the Court of Appeals overturning a district court judgment for the plaintiff, 350 U. S. 898. Later that same Term, after a petition for rehearing had been denied, 350 U. S. 943, the Court was persuaded on "a

but again no attempt was made to file a further petition for rehearing here in *Gondeck*.

It was this Court's decision of last Term in *O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.*, 380 U. S. 359, which itself was a debatable innovation in this area of the law,[4] that triggered the undoing of this judgment of four Terms ago. It should be noted that the subject matter in *O'Keeffe v. Pan American World Airways, Inc.*, was an entirely *different* accident from the one in which petitioner's decedent was involved.

This, then, is hardly one of those rare cases in which " 'the interest in finality of litigation must yield' " because " 'the interests of justice would make unfair the strict application of our rules,' " *ante*, pp. 26–27. On the contrary, the situation is one in which the prevailing party in this litigation had every reason to count on the judgment in its favor remaining firm. Believing that this decision holds seeds of mischief for the future orderly administration of justice, I respectfully dissent.

---

motion to recall and amend the judgment" that its mandate, which simply reinstated the District Court's judgment, was incorrect and that the case should properly have been remanded to the Court of Appeals for further proceedings. It is difficult for me to see how the correction during the same Term of our own error in *Cahill* can be thought to compel or justify a general "rule of 'no finality' " (as my Brother CLARK puts it, *ante*, p. 29) which requires the granting of a second petition for rehearing three years after the first one was denied in a case which this Court never heard.

[4] The case was decided without argument by a substantially divided Court, 380 U. S. 359. See dissenting opinion of HARLAN, J., joined by CLARK and WHITE, JJ., 380 U. S., at 365. See also separate opinion of DOUGLAS, J., 380 U. S., at 371.