HELEN HYJACK, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, PLAINTIFF, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES PENSION COMMISSION; AND HUDSON COUNTY EMPLOYEES PENSION COMMISSION, DEFENDANTS.

JOHN BAROTTA, PLAINTIFF, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES PENSION COMMISSION; AND HUDSON COUNTY EMPLOYEES PENSION COMMISSION, DEFENDANTS.

JAMES CHRICHELLA, PLAINTIFF, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES PENSION COMMISSION; AND HUDSON COUNTY EMPLOYEES PENSION COMMISSION, DEFENDANTS.

ROSE LANGREHR, PLAINTIFF, v. JOSEPH M. NOLAN, RECEIVER OF THE HUDSON COUNTY EMPLOYEES PENSION COMMISSION; AND HUDSON COUNTY EMPLOYEES PENSION COMMISSION, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided August 2, 1976.

546

Mr. *James E. Flynn* for plaintiffs Helen Hyjack, John Barotta, James Chrichella, Rose Langrehr and members of the class.

Mr. *William E. Andersen* for plaintiff Catherine Stites, a member of the class (Mr. *Jesse Moskowitz*, attorney).

Mr. *Jay Scott MacNeill* for Joseph M. Nolan, receiver of the Hudson County Employees Pension Commission (*Messrs. Nolan, Lynes, Bell & Moore*, attorneys).

Mr. *William J. Cunnane*, Assistant County Counsel, for the Hudson County Employees Pension Commission (*Mr. Harold J. Ruvoldt, Jr.*, County Counsel, attorney).

KENTZ, J. S. C. This matter is before the court on a motion to dismiss the consolidated complaints filed herein for failure to state a cause of action. A review of the undisputed facts is necessary for a full understanding of the issue raised by this motion.

Plaintiff Helen Hyjack (Hyjack) was employed as a clerk by the Bureau of Elections of Hudson County. After 13½ years of service plaintiff became unable to continue to perform the duties of that position by virtue of a medical disability. She made application to retire to defendant Hudson County Employees Pension Commission (Commission) in a good faith belief that she was entitled to said retirement. Hyjack complied with the requirements of the Commission and submitted to an examination by its physician, who recommended approval of her application. The Commission thereupon granted her a disability pension effective May 1, 1966 in the amount of $2,400 a year. Upon receiving notice from the Commission that her pension was granted, she surrendered her position of employment in reliance thereon and has not worked since her retirement.[1]

Following a grand jury investigation in 1971 into the operation of the Commission, defendant Joseph M. Nolan was appointed receiver by order dated March 1, 1972 and was vested with all powers, functions and duties of the Commission. Following his appointment Nolan commenced an extensive review of the propriety of the pensions previously granted by the Commission and thereafter suspended the disability pensions of the plaintiffs.[2] As a result, Hyjack's pension payments were stopped as of March 1, 1972.

After an administrative hearing Nolan notified Hyjack in September 1972 that he was permanently terminating her pension, and as a result thereof the Commission has refused to continue her pension. Similarly, the disability pensions of the other plaintiffs were terminated by the receiver.

---

[1] The basic facts as they relate to the other plaintiffs are substantially the same as herein stated, and for the purpose of this opinion a factual recitation for each other plaintiff is unnecessary.

[2] Reference herein to plaintiffs shall include all so individually named as well as all members of the class, except Thomas J. Millard and Agnes Dolan Feit who on their motion were excluded therefrom by order of the court.

Hyjack and the others received with the notice of termination of their pensions a further notice that they could appeal the decision to terminate their pension to the Superior Court of New Jersey within 45 days, pursuant to *R.* 4:69–6. Hyjack and many other pensioners did not appeal as suggested by the notice. However, some pensioners did elect to appeal. The history of that appellate litigation is set forth in *Skulski v. Nolan,* 68 *N. J.* 179 (1975) ; *Ruvoldt v. Nolan,* 63 *N. J.* 171 (1973).

It appears from the record that Nolan, in terminating the various disability pensions, did not consider himself limited by the principles of equitable estoppel, nor did he give any presumption of validity to the pension grants made by the Commission. In *Skulski* our Supreme Court, in setting down certain guidelines, said:

Accordingly, we have concluded that the interests of justice will best be served in these cases by employing a two step approach. The first phase of the inquiry concerns the threshold question of the propriety of reexamining the merits of a prior pension grant. Except to the extent noted below, the merits of the arguments for or against entitlement itself are not pertinent to this phase of the proceedings. With respect to this aspect of the inquiry, the pensioner will have the burden of coming forward with evidence of such facts and circumstances as will justify the conclusion that the merits of his entitlement to pension benefits should not be reexamined. This determination will be based on proofs by pensioner which may include the following :

(1) the applicant's subjective good faith belief that he was entitled to benefits ;
(2) the extent of the applicant's change of position in reliance on the initial pension grant ; and
(3) the extent to which the applicant's reliance has foreclosed alternate oportunities for pension benefits.

We deem it appropriate to place the burden of coming forward with evidence on these matters upon the pensioner since he is in a better position than the receiver to produce such evidence. With respect to the time period between the initial grant and the receiver's reconsideration, the receiver will have the burden of both coming forward and burden of proof (persuasion) that action was taken within a reasonable period and with reasonable diligence. The Board is in a better position to know these facts.

However, the burden of proof (persuasion) as to this first phase shall devolve upon the receiver. Therefore, in addition to cross-

examination and counter proofs as to the foregoing, the receiver may present proofs as to fraud or illegality in the original application and any contribution thereto or participation therein by the pensioner as part of the first phase of the inquiry. If, but only if, the receiver sustains his burden of proving that the pension award should be reconsidered, the second phase of the inquiry becomes material, that is, a determination as to whether the applicant was medically entitled to a pension pursuant to the statute. [68 *N. J.* at 199–200]

*Skulski* established a two-pronged inquiry to be made by Nolan. First, the receiver had to show, applying the *Skulski* criteria, that it was fair to reopen at all and, secondly, only if he showed that the reopening was reasonable should the question of the merits of the pension grant be considered. Even in that second phase, a presumption of validity in favor of the original grant was to be maintained, and the burden of proof in both phases was on the receiver. Finally, the *Skulski* opinion set forth liberal workmen's compensation standards for governing any decision on the medical merits under phase two, thus distinguishing *Russo v. Teachers Pension,* 62 *N. J.* 142 (1973).

Following the *Skulski* decision Hyjack and the other named plaintiffs filed the complaints which are the subject of the present motion for dismissal. They argue that Nolan's decision to terminate their pensions was arbitrary and in violation of their rights; that his action was taken upon erroneous principles of law, and that principles of estoppel and laches should bar the termination of their pensions. They seek a judgment setting aside the action of Nolan and directing the Commission to reinstate their pensions with full payment of arrearages together with costs. They also seek to enjoin Nolan and the Commission from interfering with any future pension payments that might be due them. In the alternative, they seek a judgment directing defendants to reconsider the termination of their pensions in the light of the principles set forth in *Skulski.*

Plaintiffs filed a motion to have the pending matter declared a class action pursuant to *R.* 4:32–1(b)(3) and to amend the complaints accordingly. Since the receiver's pri-

mary defense to these actions was common to all plaintiffs, the motion was granted and the complaints were thereafter amended. An order of the court was also entered consolidating all of the above entitled actions. *R.* 4:38–1.

Nolan bases his motion to dismiss the complaints for failure to state a cause of action on the fact that plaintiffs did not file an appeal within 45 days after notice of his determination. Furthermore, he contends that the *Skulski* decision is only applicable to those who participated in that appeal. It would appear that plaintiffs met all of the criteria set forth in *Skulski* which would bar the reopening of their pension grants.

At the hearing on the motion to dismiss the court accepted the facts as set forth in the complaint as true. *R.* 4:6–2. After considering these facts, the briefs filed and the oral argument of counsel, this court concluded that the motion to dismiss the complaints should be denied. An order was entered accordingly on August 2, 1976 which provided, among other things, that plaintiffs should be entitled to separate hearings concerning the restoration of their pensions, in accordance with the principles set forth in *Skulski.*

Leave was granted to defendant to appeal the interlocutory order of this court denying the motion to dismiss the complaint. *R.* 2:2–4. This opinion is intended to be an amplification of the oral opinion announced by the court at the time of the denial of the defendant's motion. *R.* 2:5–1(b).

It is conceded that plaintiffs did not file an appeal for a review of the termination of their disability pensions within 45 days as notified. At this point it is significant to mention that the initial action which led to the appointment of the receiver was originally filed in the Superior Court of New Jersey, Law Division, Hudson County, and was never formally transferred to the Chancery Division although referred to the judge assigned to that court for hearing. Likewise, the present complaints were filed in the Law Division and assigned to this court for disposition. It appears that the actions which are the subject matter of

these complaints are in the nature of an in lieu proceeding. In accordance with the terms of the notice given by Nolan and by the provisions of *R.* 4:69–6, an action in lieu of prerogative writs must be commenced within 45 days, except that the court may enlarge the period of time where the interest of justice so requires. Furthermore, it should be noted that *R.* 4:50–1(f) allows relief from a final judgment "[for] any other reason justifying relief from the operation of the judgment or order." It is well established that the invocation of this section of the rule is appropriate whenever the needs of justice so require.

The question raised here is whether in the factual setting presented plaintiffs may bring this action at this time, or whether they are barred for untimeliness since they did not appeal from the receiver's determinations and were not parties to the *Skulski* proceeding. My research does not disclose any case in New Jersey precisely on point. However, our courts have dealt with similar issues. In *E & K Agency, Inc. v. Van Dyke,* 60 *N. J.* 160 (1972), it was held that a reversal of a judgment on appeal which was jointly binding on several parties inures to the benefit of all parties to the action regardless of whether they actually participated in the appeal. See also, *Scheck v. Houdaille Const. Materials,* 121 *N. J. Super.* 335 (Law Div. 1972), wherein the court corrected a prior judicial determination where a dismissal was based on a misinterpretation of a statute brought to light by a subsequent reported decision. Our Supreme Court recently had occasion to deal with a similar problem in the case of *Hartford Ins. Co. v. Allstate Ins. Co.,* 68 *N. J.* 430 (1975). The Appellate Division there had before it two separate appeals from totally different cases involving the same legal issue. The legal issue was whether an insured who was the passenger in an insured car could collect when injured by an uninsured driver of a second car from both the uninsured motorist coverage of his own company as well as from the company of the car in which he was a passenger. The Appellate Division heard arguments in these matters

on the same day and subsequently rendered a decision favorable to the insurance carriers in both cases. One of the plaintiffs, Phillips, sought certification and successfully obtained reversal of the Appellate Division opinion. The other plaintiff, Yuhas, did not seek certification from the Appellate Division opinion. However, after the Supreme Court opinion in the *Phillips* case, Yuhas moved in the Appellate Division for a rehearing. This application was denied as being untimely. Thereafter, the Supreme Court granted his petition for certification. The Supreme Court denied him relief on the merits based on his failure to appeal within the normal time limits. The court held that Yuhas did not come within the rule followed in *E & K Agency, Inc., supra.* The court pointed out that Yuhas was not a party in the *Phillips* case where the Supreme Court had rendered a favorable judgment. Nor, did his cause of action have any factual relationship to that of plaintiff in that suit. The only connection was that the appeals were argued together in the Appellate Division.

An appropriate analogy might be made to those cases in the federal courts which have granted relief from a final judgment under *F. R. C. P.* 60 (b) (6) "for any other reason." This is equivalent to our *R.* 4:50–1 (f). The federal rule has been called "the grand reservoir of equitable power to do justice in particular cases." *7 Moore, Federal Practice,* § 60.27(1). Its invocation is appropriate whenever necessary to accomplish justice. *Klapprott v. U. S.,* 335 *U. S.* 601, 69 *S. Ct.* 384, 93 *L. Ed.* 266 (1949). In the exercise of this rule the federal courts have granted relief from a final judgment where there has been a change in the judicial view of the rule of law. *Gondeck v. Pan American World Airways, Inc.,* 382 *U. S.* 25, 86 *S. Ct.* 153, 15 *L. Ed.* 2d 21 (1961); *Pierce v. Cook & Co., Inc.,* 518 *F.* 2d 720 (10 Cir. 1975); *Tarkington v. United States Lines Co.,* 222 *F.* 2d 358 (2 Cir. 1955); *Tsakonites v. Transpacific Carriers Corp.,* 322 *F. Supp.* 722 (S. D. N. Y. 1970).

Nolan attempts to distinguish the rationale of the holding in *E & K Agency, Inc., supra,* by pointing out that here there is no judgment jointly binding upon plaintiffs and those who appealed in *Skulski.* There is no judgment in plaintiffs' cases; there are only administrative redeterminations by the receiver. Nolan would further argue that each of these pension matters is a separate individual determination. However, *Skulski* was not directed to the merits of the pension grants alone but was also directed toward the propriety of the reopenings in the first instance. The reason for the reopenings is common to all the pension cases and the same criteria as to whether there should be a reopening must be equally applied or else there would be an unequal application of the law.

While plaintiffs in the present case were not parties to the *Skulski* proceeding, their cases do have a factual relationship to the plaintiffs in that case. The reopenings of the disability pensions of the plaintiffs and the parties in the *Skulski* case are a factually related occurrence which resulted from the authorization given to the receiver by the court that appointed him. In that litigation neither plaintiffs here nor Skulski (and the other plaintiffs) were party defendants, but they were factually related because it was that authorization which allowed Nolan to embark upon his review of these disability pensions. Because of the factual relationship involved with the reopenings of all the pensions, it becomes a travesty on justice to allow Nolan's determinations as to plaintiffs to stand unchallenged when they are based on criteria which the highest court in this State has delared inappropriate. Furthermore, we are not dealing with anything as sacrosanct as a final judgment of a court of record. As noted above, our rules provide for relief even from such judgments. We are dealing with administrative determinations. Indeed, it is ironic that Nolan, who argued for the power to reopen prior administrative determinations made a quarter of a century ago and who, in Hyjack's case, reopened a determination made some five years before, should

now use the failure of plaintiffs to act within a certain time frame as a defense. Both *Skulski* and *Ruvoldt, supra,* clearly identify the right of an administrative agency to reconsider prior decisions. That is the basis on which the receiver purported to act in these cases. Clearly, the administrative agency here, whether it be Nolan or the Commission, has the power to reconsider these cases again. That is, to reconsider the receiver's determinations.

Nolan further contends that the County Employees Pension Fund (Fund) has irrevocably changed its position and vested some rights by virtue of the receiver's determinations. This is based on the fact that some time in 1975 the Fund ceased to appropriate or budget money for plaintiffs' pensions. I am not satisfied that this is an irreversible change in position. Money can be re-set aside. The Fund can be supplemented by general appropriations when necessary. This argument is without merit if plaintiffs are otherwise ultimately entitled to these pensions.

Weighing the equities of this case and considering the dictates of fundamental fairness and justice, I conclude that plaintiffs should be entitled to individual hearings concerning the restoration of their disability pensions in accordance with the criteria set forth in *Skulski*. To do otherwise would result in a grave miscarriage of justice inasmuch as there could be a permanent deprivation of pension benefits brought about by a misinterpretation of the applicable law. Under the circumstances here, I will not allow a procedural technicality or deficiency to act as a barrier to the need to do substantial justice. Plaintiffs should not be deprived of the opportunity to be heard. Foreclosing them at this time would bring about an unjust, oppressive and inequitable result.

Accordingly, the motion to dismiss this complaint is denied. Plaintiffs shall be entitled to individual hearings concerning the restoration of their disability pensions pursuant to the guidelines set forth in *Skulski*. By this ruling, I make no determination with respect to the merits of each plaintiff's claim to a pension.