# United States Court of Appeals
## For the First Circuit

No. 14-1742

BATTELLE MEMORIAL INSTITUTE, and
VIGILANT INSURANCE COMPANY,

Petitioners,

v.

SANDRA DICECCA, and
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

Respondents.

PETITION FOR REVIEW OF AN ORDER OF THE
BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR

Before
Barron, Circuit Judge,
Souter,* Associate Justice,
Lipez, Circuit Judge.

Robert N. Dengler, with whom Flicker, Garelick & Associates, LLP was on the brief, for petitioners.
Howard S. Grossman, with whom Grossman Attorneys At Law, Thomas A. Tarro, III, Kris Macaruso Marotti, Tarro & Marotti Law Firm, LLC were on the brief, for respondent DiCecca.
Matthew W. Boyle, with whom M. Patricia Smith, Solicitor of Labor, Rae Ellen James, Associate Solicitor, Mark Reinhalter, Counsel for Longshore, and Gary K. Stearman, Counsel for Appellate Litigation, were on the brief, for federal respondent.

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

July 6, 2015

**SOUTER, Associate Justice..** This case comes to us on petition to review an award of death benefits made by the Benefits Review Board under the Defense Base Act (DBA), 42 U.S.C. § 1651 et seq. The recipient (respondent here) is the widow of a covered employee stationed in Tbilisi, Georgia who died in an auto accident while traveling by taxi to shop for groceries. The issue turns on application of the "zone of special danger" principle, O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 507 (1951), and we affirm the agency's award.

### I.

Gerald DiCecca was hired by Petitioner Battelle Memorial Institute (BMI) as a facility engineer in its Tbilisi, Georgia laboratory, BMI being a subcontractor working for the U.S. Department of Defense on countering the threat of biological weapons. DiCecca's formal hours were 8 a.m. to 5 p.m., Monday through Friday, but, according to a colleague, "everyone [was] always on call to one degree or another," even in the absence of an on-call schedule. Every employee was "called on to come in outside of normal working hours from time to time to respond to emergencies."

BMI's laboratory included neither housing accommodations nor a restaurant, and employees were provided instead with a housing and utilities allowance, with no restrictions on where

- 3 -

they could live.  While some had cars of their own, BMI provided taxi vouchers up to a value of 700 (Georgian) Lari a month, payable to a company called Lucky Cabs.  These vouchers were good only within a 25 km radius of the city, but they could be used for any purpose, be it professional or personal, including grocery shopping.  On top of these benefits, DiCecca received a 25% salary supplement as "hardship pay" for working where, according to his employment contract, "the living conditions are unusually difficult or dangerous and/or facilities are inadequate."

DiCecca's "conditions . . . and[] facilities" included two grocery stores for food shopping.  The smaller one was a five-to-ten minute walk from his apartment, but the respondent, who visited her husband in Tbilisi, did not consider that store "safe" and would not eat food from it, after observing flies on the meat.  The second, which she did consider safe enough, was like a Walmart, with a larger selection, but some 12-14 km away from DiCecca's apartment, a roughly 20-minute taxi drive.

DiCecca was traveling to this larger grocery store in a Lucky Cabs taxi when it was hit head-on by another car, whose driver was apprehended on suspicion of drunk driving.  DiCecca died from his injuries.

On the widow's claim for death benefits, the administrative law judge received evidence and held in her favor.

BMI appealed, and the Board affirmed the award. The petition for our review followed, and here the Board has also appeared as a respondent.

## II.

The DBA, enacted in 1941, provides workers' compensation coverage for those employed outside the continental United States on national defense projects, under contracts with or approved by the government, by extending the application of the Longshore and Harbor Workers' Compensation Act (LHWCA). 42 U.S.C. §§ 1651(a)(4)-(5), 1651(b)(1); see also Truczinskas v. Office of Workers' Comp. Programs, 699 F.3d 672, 674 (1st Cir. 2012). The LHWCA provides compensation for injuries or death "arising out of and in the course of employment." 33 U.S.C. § 902(2). In the sub-class of cases subject to the DBA, however, this scope-of-employment provision is modified by the "zone of special danger" doctrine set forth in O'Leary, 340 U.S. at 507, and subsequently applied in O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359 (1965) (per curiam), and Gondeck v. Pan American World Airways, Inc., 382 U.S. 25 (1965) (per curiam). Given both the scarcity of appellate case law on the doctrine's meaning, here and in other circuits, and the generality of the terms in which the doctrine is set forth, we think a review of the three Supreme Court cases is in order.

A.

The facts in O'Leary are remarkable. The employee was stationed in Guam working for a government contractor. The employer maintained a recreation spot near the shoreline, along which ran a channel so dangerous that swimming was prohibited (and signs were in place saying so). An employee who had enjoyed an outing there was waiting for a bus when he saw two men signaling for help from a reef across the channel; he dove in to swim to their rescue and drowned. O'Leary, 340 U.S. at 505. The Deputy Commissioner of Labor awarded death benefits, but the Ninth Circuit reversed, treating the employee's rescue attempt as distinct from the recreation the employing contractor had in mind and outside the course of employment. Id. at 506.

In an opinion by Justice Frankfurter, the Supreme Court rejected the Ninth Circuit's analysis as "too restricted an interpretation of the act."

> Workmen's compensation is not confined by common-law conceptions of scope of employment. The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the obligations or conditions of employment create the zone of special danger out of which the injury arose. A reasonable rescue attempt, like pursuit in aid of an officer making an arrest, may be one of the risks of the employment, an incident of the service,

- 6 -

> foreseeable, if not foreseen, and so covered by the statute. This is not to say that there are not cases where an employee even with the laudable purpose of helping another, might go so far from his employment and become so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment. We hold only that rescue attempts such as that before us are not necessarily excluded from the coverage of the Act as the kind of conduct that employees engage in as frolics of their own.

Id. at 506-07 (citations and quotation marks omitted).

While much attention has been paid to this passage, we find another aspect of O'Leary instructive as well, in setting the scope of judicial review of an administrative coverage decision. O'Leary called the agency's determination of whether a particular injury falls within the zone of special danger a "question of fact," describing this expansive conception of what is factual by calling the conclusion in question one that "concerns a combination of happenings and the inferences drawn from them." Id. at 507. The Court acknowledged that "the inferences presuppose applicable standards for assessing the simple, external facts" but did not believe the determination was "appropriate for independent judicial ascertainment as questions of law." Id. at 507-08. Accordingly, as a factual determination, the agency's findings applying the zone-of-special-danger doctrine are commonly reviewed by applying the deferential "substantial evidence" test under the

- 7 -

Administrative Procedure Act.  See id. at 508.  So, in O'Leary, the Court reviewed the evidence in support of the agency's award of benefits and, while observing that it did not "compel[] th[e] inference" drawn by the agency (and indeed could have supported the contrary conclusion), found the evidence "consistent and credible" enough that the agency "could rationally infer that [the employee] acted reasonably in attempting the rescue, and that his death may fairly be attributable to the risks of the employment." Id.

While the zone-of-special-danger doctrine was born in a case about a very hazardous rescue attempt, it has not been limited to circumstances of such extraordinary risk.  The Supreme Court's subsequent cases have involved employees' deaths arising out of recreational activities (a boating mishap, and a car accident returning from a night club).  Both times, the Court ruled in support of an award of benefits.  Smith, Hinchman & Grylls, 380 U.S. 359; Gondeck, 382 U.S. 25.

Smith, Hinchman & Grylls presents another example of exceptional facts.  The employee of a government contractor in Seoul, South Korea left the city to spend Memorial Day weekend at a friend's lake house.  Their Saturday activities were meant to improve the beach in front of the house, for which they crossed the lake in a small boat and filled it with sand from the other

- 8 -

side.  The boat capsized on the trip back, and the employee died. See 380 U.S. at 359; id. at 365 (Harlan, J., dissenting).  The agency awarded benefits, but the Fifth Circuit reversed.  Id. at 360-61 (per curiam).

The Supreme Court reversed in its turn, and began by emphasizing how its prior decisions "limit the scope of judicial review of the [agency's] determination that a particular injury arose out of and in the course of employment."  Id. at 361 (citation and quotation marks omitted); see also id. at 362 (reasonable inferences made by the agency "may not be disturbed by a reviewing court" (quoting Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 478 (1947))).  Thus the agency's award must stand so long as it is not "irrational or unsupported by substantial evidence on the record as a whole."  Id. (citation, quotation marks, and ellipses omitted).

On the merits, the Court repeated the "zone of special danger" formulation and the O'Leary exegesis, as being "in accord with the humanitarian nature of the Act."  Id.  It then held that the agency's award was neither irrational nor wanting substantial evidence in the record as a whole: the employee had been hired to work in the "exacting and unconventional conditions of Korea"; his transportation to and from Korea was at his employer's expense; he worked 365 days each year, was on-call at all times, and quite

- 9 -

often worked on Saturdays and Sundays; his employer provided neither housing nor recreation but provided a daily per diem for his necessary expenses; the accident occurred on a short recreational outing just thirty miles from the employer's workplace; and the recreation might be said to benefit the employer. See id. at 363-64. As in O'Leary, the Court observed that it "may not have reached the same conclusion as the" agency, id. at 363, but nevertheless affirmed the award, and cited with approval four circuit court cases, all supporting awards for injuries arising out of recreational activities. See O'Keeffe v. Pan Am. World Airways, Inc., 338 F.2d 319 (5th Cir. 1964) (employee in Grand Turk, British West Indies died in a scooter accident while returning to base from social visit); Pan Am. World Airways, Inc. v. O'Hearne, 335 F.2d 70 (4th Cir. 1964) (employee in San Salvador, British West Indies died in a jeep accident while returning to base from night club in nearby town); Self v. Hanson, 305 F.2d 699 (9th Cir. 1962) (female employee in Guam was injured when another vehicle collided with her parked car, during rendezvous with a male employee); Hastorf-Nettles, Inc. v. Pillsbury, 203 F.2d 641 (9th Cir. 1953) (employee in Alaska was injured in a car accident while returning from Labor Day outing in another city).

The scope of coverage assumed in Smith, Hinchman & Grylls's plenary catalog of supportive facts gained emphasis from

- 10 -

the dissenting criticism of three justices, who concentrated on two points. First, the dissenters read the per curiam opinion as effectively holding that "any decision made by a Deputy Commissioner must be upheld." 380 U.S. at 366 (Harlan, J., dissenting, joined by Clark, White, JJ.). Second, the dissenters argued that only an incorrect "but for" compensation rule could justify the award of benefits in that case. See id. at 369-71. The majority justices responded that such criticisms were inconsistent with the "limited judicial review" available under the statute. Id. at 364 (per curiam). They added that "this type of determination, depending as it does on an analysis of the many factors involved in the area of the employment, would seem to be one peculiarly for the Deputy Commissioner." Id.

The third of the trio of cases, Gondeck, arose from the death of an employee working for Pan American Airlines in San Salvador, British West Indies who perished in a jeep accident, in fact the same accident at issue in the Fourth Circuit case, O'Hearne, 335 F.2d 70, cited with approval in Smith, Hinchman & Grylls, 380 U.S. at 364. The Pan American base had its own bar as well as bus service to a nearby town with a night club. The employee nevertheless took a company jeep to the club (likely without authorization) and died in an accident during the return trip, possibly from speeding. The agency awarded benefits, and

- 11 -

the Fifth Circuit reversed. See Gondeck, 382 U.S. at 26; United States v. Pan Am. World Airways, Inc., 299 F.2d 74, 75 (5th Cir. 1962), rev'd sub nom. Gondeck, 382 U.S. 25; O'Hearne, 335 F.2d at 70-71. The Supreme Court again reversed the Fifth Circuit. Its discussion was brief and largely focused on procedural details not relevant here. As to the merits, it appeared to find the case straightforward. The Court reiterated the "limited judicial review" of agency determinations and upheld the award under the zone-of-special-danger doctrine set forth in O'Leary and Smith, Hinchman & Grylls. See Gondeck, 382 U.S. at 27.

From these and the few recent appellate and administrative cases on point, we can extract some general principles creating a legal texture, though not a precise rule. First, the zone-of-special-danger doctrine under the DBA works an expansion of traditional employer liability to include coverage for injuries without any direct causal connection to an employee's particular job or to any immediate service for the employer. They must simply fall within foreseeable risks occasioned by or associated with the employment abroad. Although the requisite "special danger" covers risks peculiar to the foreign location or risks of greater magnitude than those encountered domestically, the zone also includes risks that might occur anywhere but in fact occur where the employee is injured. "Special" is best understood

- 12 -

as "particular" but not necessarily "enhanced." There is a pale of cognizability, however, which stops short of astonishing risks "unreasonabl[y]" removed from employment. See O'Leary, 340 U.S. at 506-07; see also Truczinskas, 699 F.3d at 681 (DBA "is not the equivalent of health or life insurance" (citations omitted)). Thus administrative determinations have denied benefits, for example, for damages from cosmetic skin peels, R.F. v. CSA, Ltd., 2009 WL 3159147, 43 BRBS 139 (2009), and asphyxiation from auto-erotic practices, Gillespie v. Gen. Elec. Co., 21 BRBS 56 (1988).

Second, the determination of foreseeable risk is necessarily specific to context and thus turns on the totality of circumstances. See Smith, Hinchman & Grylls, 380 U.S. at 363-64; O'Keeffe, 338 F.2d at 325; O'Hearne, 335 F.2d at 70-71; Self, 305 F.2d at 702-03; Pillsbury, 203 F.2d at 643; see also Kalama Servs., Inc. v. Office of Workers' Comp. Programs, 354 F.3d 1085, 1092 (9th Cir. 2004), cert. denied, 543 U.S. 809.

Third, and relatedly, in this corner of the law, the agency is given deference in applying the apposite doctrine to the particular case at hand. Accordingly, the agency's rational determination is treated as far as possible as a finding of fact, for which a reviewing court considers only whether the agency had a substantial basis in the record. See O'Leary, 340 U.S. at 507-09; Smith, Hinchman & Grylls, 380 U.S. at 361-65; Gondeck, 382

- 13 -

U.S. at 27.  And when agency action extends beyond even O'Leary's rather catholic understanding of fact-finding, its legal determination is entitled to deference under the rule in Skidmore v. Swift & Co., 323 U.S. 134, 140 (1994) (reasonable agency interpretations have persuasive force, even if "lacking power to control").  See Neely v. Benefits Review Bd., 139 F.3d 276, 281 (1st Cir. 1998) (citing Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 136 (1997) (according Skidmore deference to this agency)).

B.

We turn now to the Board's decision awarding benefits and to its crucial passage.

> The administrative law judge addressed the proper inquiry under O'Leary, focusing on the foreseeability of the injury given the conditions and obligations of employment in a dangerous locale.  Decedent lived and worked in a dangerous locale as evidenced by the employer's payment of a hardship allowance/danger pay.  Employer provided its employees taxi vouchers each month for use with a specific cab company that utilized Mercedes Benz automobiles. Employer permitted its employees to utilize the cab service for any reason within a certain radius. . . . [I]t is also entirely foreseeable that an employee will need to purchase groceries, and, given the taxi vouchers provided by employer, entirely foreseeable that decedent would take a taxi to the grocery store.  The fatal accident, thus, also was a foreseeable, "if not foreseen," consequence of riding in a taxi in a place where the dangers of automobile travel were anticipated by employer.  Although

employer attempted to mitigate the danger, employer has not cited any circumstances that could warrant a legal conclusion that decedent's activity was not rooted in the conditions of his employment or was "thoroughly disconnected" from the service of employer. We, therefore, affirm the administrative law judge's findings that the zone of special danger doctrine applies and that decedent's death is compensable under the Act as they are rational, supported by substantial evidence and in accordance with law.

BRB No. 13-0378, 2014 WL 2530888, at *3 (DOL Ben. Rev. Bd. May 9, 2014) (citations omitted).

The record holds the substantial evidence that supports these findings and ensuing conclusions. BMI assigned DiCecca to a foreign workplace, where he was always subject to call, and assumed provision of transportation there by taxi service limited as to geography but for any purpose, within the scope of which food buying was foreseeable travel with risks that were realized in this fatal accident. These findings would suffice for liability, but the Board mentioned another relevant condition that supports its conclusion, though not crucial to it: BMI provided hazardous duty pay on top of DiCecca's base salary, indicating that reasonably foreseeable risks generally extend beyond the conditions of American grocery shopping.[1]

_____

[1] Indeed, BMI does not point to any particular factual error underlying the Board's ruling. Rather, it contends that an employee's pursuit of a "necessity" should not be considered within

- 15 -

BMI's principal contention for reversing the award is that the zone-of-special-danger case law demands a nexus between the employment and the activity giving rise to the injury, a requirement to be satisfied in only two alternative ways: (1) when the injury occurred during a reasonable recreational activity in an isolated place with limited social opportunities; or (2) where the site of work presented conditions enhancing the risk of injury to some appreciable degree beyond the domestic norm. BMI says that DiCecca's assignment here falls into neither category, and so lacks the nexus between injury and employment.

While at a general level we hardly quarrel with the proposition that there must be some nexus between injury and employment, the cases are at odds with BMI's binary exclusiveness in which the only alternative to heightened danger is recreational activity. In its argument for this limited category, BMI focuses

the scope of employment. But, as just indicated, the record here does not show a simple pursuit of a necessity. In any case, as explained below, a categorical distinction between pursuit of a necessity and optional engagement in recreation would be irrational.

For its part, the Board presses in its brief that this case presents a question of law and thus this court should approve the Board's rule that injuries arising out of reasonable and foreseeable activities are always covered by the DBA. But, although we have engaged in totality of circumstances review, it is really unnecessary to accept the Board's general rule as a distillation of totality of circumstances cases or as an approach subject to Skidmore deference. We simply have no need to resolve this question.

- 16 -

on the Fifth Circuit's language in O'Keeffe, that on an island "lacking in most of the social and recreational facilities usually available to American employees, the individual's recreation is in the service of his employer no less than in his own interest." 338 F.2d at 325. BMI goes on to emphasize similar language in other cases for the theory that recreational activity is considered within the scope of employment because it benefits the employer. See Petitioners Br. at 13-17 (citing Pillsbury, Self, O'Hearne, Gondeck, Smith, Hinchman & Grylls, and Kalama).

What does not follow, however, is that good times are the only foreign activities that serve the employer as well as the employee, or even that mutual benefit is necessary for an adequate nexus in the absence of enhanced risk. To begin with, these cases cannot be reduced to a single controlling factor, for in each case, the application of the zone-of-special-danger doctrine turned on the totality of circumstances. See, e.g., Smith, Hinchman & Grylls, 380 U.S. at 363-64 (listing perhaps ten different considerations, depending on how one counts, only one of which was a benefit to the employer); Pillsbury, 203 F.2d at 643 (same). And, even if these cases could be reduced to a single crux, it would not be employer benefit, which was flatly rejected in O'Leary. 340 U.S. at 507 ("Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his

employer."). What is more, even if employer benefit were crucial, it is hard to imagine a better example of an activity that benefits the employer than its employee's pursuit of safe food to stay alive and healthy; flies on the meat are to be avoided. And, finally, to the extent that geographic isolation in a foreign venue appears to be doing any work in the case law, it explains why an otherwise personal activity, like recreation, should be deemed a necessity and thus incident to overseas employment. See, e.g., Self, 305 F.2d at 703 ("Obviously, recreation was considered a necessity for [these] employees in Guam . . . ."). By that logic, because grocery shopping is a necessity, it too should be considered an incident to the employment. The short of it is that it is very hard, perhaps impossible, to distill a rule that injuries arising out of a night on the town are covered but not those incurred shopping for food.

Of course, as we said, there must be a nexus between the employment and injury: the injury must arise out of foreseeable risks associated with employment abroad. See, e.g., Kalama, 354 F.3d at 1092 ("The ALJ also found that the presence of social clubs serving alcohol to employees who experience lengthy periods of isolation on the [island] creates a foreseeable risk that horseplay might take place from time to time."); O'Hearne, 335 F.2d at 71 ("In the circumstances of his employment-residence, the [agency]

thought, [the employee] was only doing what he (might) reasonably be expected to do.  In short, that his brief exit was an incident of the service." (internal quotation marks omitted)).  Here, the Board reasonably found that nexus satisfied.[2]

III.

The order of the Benefits Review Board is <u>affirmed</u>.

---

[2] BMI expresses a concern that an award of benefits for injuries arising out of activities that are "ubiquitous" (such as grocery shopping) would eliminate any limit on liability under the DBA.  <u>See</u> Petitioners Br. 22-24; Reply Br. 5-6.  But this argument proves too much; recreation is a "ubiquitous" activity, and yet recreational injuries are commonly covered.  The most that can be said in BMI's favor is that not all "ubiquitous" activities entail employer liability.  <u>See, e.g.</u>, <u>R.F.</u>, 2009 WL 3159147, at *5 (denying benefits for injuries arising out of an employee's chemical peel procedure in Kuwait because the activity intended to make the employee look good was "personal in nature," without "genesis in his employment," and thus "so thoroughly disconnected from his service to [the] employer" that the zone-of-special-danger doctrine was inapplicable).  The question, then, is which "ubiquitous" activities are covered.  And the answer is a case-specific determination of foreseeable, reasonable incidence to the foreign employment, left largely for the Board.  <u>See</u> <u>O'Leary</u>, 340 U.S. at 507-08.